UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SEAN WEBB,

Petitioner,

- against -

D.E. LACLAIR,

Respondent.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _9/30/2014_

**MEMORANDUM**
**OPINION & ORDER**

10 Civ. 7603 (PGG) (HBP)

PAUL G. GARDEPHE, U.S.D.J.:

Sean Webb, a New York state prisoner incarcerated at Elmira Correctional

Facility, filed a pro se petition for a writ of habeas corpus. (Dkt. No. 1)  On October 15, 2010,

this Court referred the petition to Magistrate Judge Henry Pitman for a Report and

Recommendation ("R&R").  (Dkt. No. 4)  On November 15, 2012 – after the Government had

filed its opposition to the petition – Magistrate Judge Pitman granted Webb's application for

appointment of counsel.  (Dkt. No. 18)  On May 9, 2014, Judge Pitman issued an R&R

recommending that this Court deny the petition in its entirety.  (Dkt. No. 22)   Webb – through

counsel – has objected to the R&R.  (Dkt. No. 23)  For the reasons stated below, this Court will

adopt the R&R and deny Webb's Petition.

**BACKGROUND**

**I.      FACTUAL BACKGROUND**

On July 18, 2006, Webb was convicted of robbery in the second degree – in

violation of New York Penal Law § 160.10 – by a jury in Supreme Court of the State of New

York, New York County.  (State Court Trial Tr. ("Trial Tr.") (Dkt. No. 14) at 346)

Webb's conviction arose from an attack that occurred in the earning morning of October 1, 2005, near Christopher Street and Seventh Avenue in Manhattan. (Trial Tr. 106, 109) The victim of the attack – Gerard Brennan – entered a bar between 2:00 and 2:30 a.m. (Trial Tr. 106) Maria Gentile, a waitress at the bar, testified at trial that she refused to serve Brennan because he was already "pretty drunk." (Trial Tr. 45) Brennan then left the bar and entered a nearby deli. (Trial Tr. 48) Gentile followed Brennan into the deli to ensure that he got a cab home. (Trial Tr. 48-49) After exiting the deli, Brennan attempted to hail a cab, but was suddenly struck by a "very powerful impact" that caused him to fall to the sidewalk. (Trial Tr. 111)

Gentile – who was still inside the deli – heard a "bang" and ran outside. (Trial Tr. 50) She testified that she saw Petitioner Sean Webb punching Brennan's head, neck, and shoulders and another individual kicking Brennan in the groin. (Trial Tr. 54, 60-62) The attack drew blood from Brennan's ear and mouth, caused him to suffer a convulsion, and left him with scrapes on his ears, eyes, and forehead. (Trial Tr. 60, 68-69, 120) Gentile also testified that she witnessed another individual – Webb's accomplice – remove a wallet and cellular phone from Brennan's pockets. (Trial Tr. 60-62) A deli employee successfully fought to retrieve Brennan's wallet from the assailants, and Webb and his accomplice fled in opposite directions. (Trial Tr. 61-62, 66-67, 96-98)

A short while later – after the police had arrived – Gentile noticed that Webb had returned to the scene, and she identified him as one of the assailants. (Trial Tr. 70) Police officers then stopped Webb, found Brennan's cellular phone in his possession, and arrested him. (Trial Tr. 132, 134-35)

2

## II.    PROCEDURAL BACKGROUND

### A.    Pretrial Proceedings

Webb alleges that – after his arrest – he informed the prosecutor and appointed counsel at his arraignment in the state court proceeding that he wanted to testify before the grand jury. (Pet. App. Br.[1] (Dkt. No. 1) at 5)  On October 7, 2005, Webb applied to the Court for new counsel, and attorney Anthony Iannarelli was appointed to represent Webb on October 12, 2005. (Gill Decl. (Dkt. No. 13), Ex. B ("Resp. App. Br.") at 9; Pet. App. Br. (Dkt. No. 1) at 5) According to Webb, he also informed Iannarelli of his desire to testify before the grand jury. (Pet. App. Br. (Dkt. No. 1) at 5)  On October 12, 2005, Webb was released on his own recognizance. (Id.)

On October 20, 2005, Webb arrived at the Manhattan District Attorney's Office to testify before the grand jury, and was told that the session had been postponed. (Id. at 6; Resp. App. Br. (Dkt. No. 13) at 9)  On November 9, 2005, the prosecutor informed Iannarelli that the grand jury proceeding had been rescheduled for November 15, 2005. (Pet. App. Br. (Dkt. No. 1) at 6; Resp. App. Br. (Dkt. No. 13) at 10)

On November 15, 2005, Iannarelli mailed a letter to Webb, informing him of the rescheduled session, and stating, "If you still wish to testify before the grand jury, you had better get in touch with me immediately.  I do not have a phone number for you, and obviously the lack of communication is a problem." (Pet. App. Br. (Dkt. No. 1) at 6-7; Resp. App. Br. (Dkt. No. 13) at 11)  Webb had listed his sister as his contact person and provided her name, address, and

---

[1] Webb's brief in the Appellate Division, First Department, is attached to his petition.  The page numbers here refer to the page numbers of the appellate brief.

telephone number to the Criminal Justice Agency.[2]  (Pet. App. Br. (Dkt. No. 1) at 6-7; Resp.

App. Br. (Dkt. No. 13) at 8-9)

On November 17, 2005, the grand jury returned an indictment, charging Webb

with robbery in the second degree.  (Pet. App. Br. (Dkt. No. 1) at 6; Resp. App. Br. (Dkt. No. 13)

at 11-12)  Webb did not testify before the grand jury that indicted him.

Gary Sunden was then appointed to replace Iannarelli as Webb's counsel.  (Pet.

App. Br. (Dkt. No. 1) at 7; Resp. App. Br. (Dkt. No. 13) at 12)  Webb moved to dismiss the

indictment, arguing that he had been deprived of his right to testify before the grand jury

pursuant to New York Criminal Procedure Law §§ 210.35(4) and 190.50, and that Iannarelli's

failure to timely inform him of the date of the grand jury session amounted to ineffective

assistance of counsel.  (Pet. App. Br. (Dkt. No. 1) at 7; Resp. App. Br. (Dkt. No. 13) at 12-13)

Justice Charles H. Solomon denied Webb's motion on March 7, 2006.  (Pet. App.

Br. (Dkt. No. 1) at 7-8; Resp. App. Br. (Dkt. No. 13) at 13)  Justice Solomon found that the

prosecutor's notice to Iannarelli was sufficient to afford Webb the opportunity to appear before

the grand jury and that counsel's failure to inform Webb – "standing alone" – did not constitute

ineffective assistance.  (Pet. App. Br. (Dkt. No. 1) at 7-8; Resp. App. Br. (Dkt. No. 13) at 13)

On March 27, 2006, Webb moved to reargue the motion, claiming that the

prosecutor had failed to inform him personally of the grand jury proceeding pursuant to New

York Criminal Procedure Law Section 190.50(5)(b).[3]  (Pet. App. Br. (Dkt. No. 1) at 8; Resp.

---

[2]  The New York City Criminal Justice Agency is a not-for-profit entity that provides pre-trial
services to the City's criminal justice system.
[3]  "Upon service upon the district attorney of a notice requesting appearance before a grand
jury . . . , the district attorney . . . must subsequently serve upon the [defendant], at the address
specified by him, a notice that he will be heard by the grand jury at a given time and place."
N.Y. Crim. Proc. Law § 190.50(5)(b).

App. Br. (Dkt. No. 13) at 14)  Justice Solomon denied this motion on April 11, 2006.  (Pet. App.

Br. (Dkt. No. 1) at 8; Resp. App. Br. (Dkt. No. 13) at 14)

**B.**   **Trial and Sentencing**

Justice James A. Yates presided over Webb's trial in July 2006.  (Trial Tr. 1)  On

July 11, 2006, after voir dire was completed, Webb inquired what sentence he would receive if

he pleaded guilty to the robbery offense.  (Voir Dire Tr. (Dkt. No. 14) at 293)  The prosecutor

represented that there was no current plea offer, but that prior to trial the People had offered an

eight-year sentence.  (Voir Dire Tr. 293-94)  Justice Yates stated that he would sentence Webb to

seven years' imprisonment if Webb entered a guilty plea.  (Voir Dire Tr. 295, 297, 299)  Webb

did not enter a guilty plea and the case proceeded to trial.  (Voir Dire Tr. 299)

At trial, Gentile testified that she had witnessed the attack on Brennan, and she

identified Webb as one of the assailants.  (Trial Tr. 54, 60-63)  After Gentile's testimony on

direction examination, a juror informed a court officer that she believed she recognized the

witness.  (Trial Tr. 81-82).  Although defense counsel requested that the juror be immediately

disqualified, Justice Yates instead questioned the juror:

| | |
|---|---|
| The Court: | . . . One of the court officers said you thought you recognized the witness. Tell me about it. |
| Juror: | I think I was introduced to her seven or eight years ago.  I'm a music producer, so singers are often introduced to me.  I'm not positive. |
| The Court: | From your recollection, was it a good impression or bad impression?  Did you hire her?  You didn't have any monetary relation or ongoing relation? |
| Juror: | No. |
| The Court: | Just the one casual visit? |
| Juror: | Yes. |

| The Court: | Would you feel unfavorable to her or favorable to her? |
|---|---|
| Juror: | I just felt ethically I should say something. |
| The Court: | As to my question, you don't have any antipathy, bias against her, or sympathy for her as a result of that possible meeting seven or eight years ago? |
| [Juror][4]: | No. |

(Trial Tr. 82-83)  Following this examination, Justice Yates concluded that that there was insufficient cause to excuse the juror.  (Trial Tr. 83, 85)

In addition to Gentile, the jury heard testimony from Brennan and two police officers.  (See Trial Tr. 103-65)  Webb did not testify or offer any evidence.  (Trial Tr. 179)  On July 18, 2006, the jury returned a guilty verdict.  (Trial Tr. 346)

On August 16, 2006, Justice Yates sentenced Webb to eleven years' imprisonment, followed by five years of supervised release.  (Sentencing Tr. (Dkt. No. 14) at 24-25)  Justice Yates sentenced Webb as a second felony offender, based on a 2001 felony conviction for grand larceny in the fourth degree.  (Sentencing Tr. 8, 10)  In explaining the reasons for the sentence imposed, Justice Yates stated, "I don't punish people for going to trial. But I was dismayed to see the extent of the injuries here and to hear about how intoxicated the complainant was[,] so that he was[ ] so completely taken advantage of."  (Sentencing Tr. 24)

C.     **Appeal**

Webb – assisted by new counsel – appealed his conviction and sentence.  (See Gill Decl. (Dkt. No. 13), Ex. A)  Webb argued that (1) he was deprived of his right to testify before the grand jury because of the prosecutor and defense counsel's failure to notify him of the

---

[4]  The trial transcript erroneously attributes this response to "The Court."

date of the proceeding; (2) the trial court erred by failing to disqualify the juror who recognized Gentile; and (3) Webb's sentence was excessive and unfair, particularly in light of Justice Yates' previous offer of seven years' imprisonment. (Id.)

On March 17, 2009, the First Department affirmed Webb's conviction and sentence. People v. Webb, 874 N.Y.S.2d 472 (1st Dep't 2009). The court found that "service upon defendant personally [of the rescheduled grand jury proceeding date] was not required," and that "[d]efense counsel's failure to effectuate defendant's request to testify [did] not, by itself, constitute ineffective assistance of counsel warranting dismissal of the indictment." Id. at 473. Moreover, the court found that – even if Webb had been present to testify – Webb had not demonstrated that there was any "reason to believe the grand jury would have credited [Webb's] testimony." Id. at 473-74. The Appellate Division also agreed with the trial court that the "juror [who recognized Gentile] was not grossly unqualified to continue serving." Id. at 497. Finally, the court held that there was "no basis for reducing [Webb's] sentence." Id.

Webb was denied leave to appeal on September 18, 2009. People v. Webb, 13 N.Y.3d 800 (N.Y. 2009).

**D.    Habeas Corpus Petition**

On September 14, 2010, Webb filed the instant petition for a writ of habeas corpus. (Dkt. No. 1) Webb argues that relief is warranted here on the same three grounds that he raised on appeal. (See id.)

On October 15, 2010, this Court referred the petition to Magistrate Judge Henry Pitman for an R&R. (Dkt. No. 4)

On November 2, 2011, the Government filed its opposition to the petition. (Dkt. No. 12) The Government argues that the petition should be dismissed because Webb has not

exhausted his state remedies – specifically, the Government claims that Webb relied only on state law, and not the federal constitution or federal law, to support his claims before the Appellate Division. (Resp. Br. (Dkt. No. 12) at 8-10)  The Government further contends that Petitioner's claims are not cognizable on the merits on habeas review.  (See id. at 11-20)

On October 21, 2010, Webb filed an application requesting appointment of counsel. (Dkt. No. 5)  The application was denied. (Dkt. No. 8)  Webb renewed this application on April 30, 2012, but on June 11, 2012, it was denied again. (Dkt. No. 16)  Webb renewed his application again on June 19, 2012, stating that he was "receiving full time mental healthcare in an inpatient setting" and was incompetent to represent himself because he had been diagnosed with "paranoid schizophreni[a] with an active psychosis with a delusional disorder." (Dkt. No. 18)  On November 15, 2012, Magistrate Judge Pitman granted Webb's application for appointment of counsel. (Dkt. No. 18)  Attorney Michael Sporn was appointed. (See Dkt. No. 21)

On December 18, 2013, Sporn submitted a letter on Webb's behalf in reply to the Government's opposition. (Dec. 18, 2013 Pet. Ltr. (Dkt. No. 21))  In addition to addressing the arguments Webb previously raised, the reply letter argues that Webb's claim regarding his inability to appear at the grand jury proceeding constitutes a violation of due process under the Fifth and Fourteenth Amendments. (Id. at 2-3)

On May 9, 2014, Judge Pitman issued an R&R recommending that this Court deny Webb's petition in its entirety, concluding that Webb had failed to raise a cognizable claim for habeas relief.[5]  (Dkt. No. 22)  On May 22, 2014, Webb objected to the R&R, stating that he

---

[5]  Because Judge Pitman concluded that Webb's claims failed on the merits, he did not address whether Webb had exhausted his state remedies. (R&R (Dkt. No. 22) at 14 n.2 (citing 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits,

"continues to assert that his right to testify is a fundamental right protected by the United States Constitution, and that the deprivation of that right on the facts here requires that his petition be granted." (May 22, 2014 Pet. Ltr. (Dkt. No. 23) at 1)

## DISCUSSION

I.   **STANDARD OF REVIEW**

A.   **Review of Magistrate Judge's Report and Recommendation**

In evaluating a magistrate judge's R&R, a district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). "Objections to an [R&R] 'are to be specific and are to address only those portions of the proposed findings to which the party objects.'" Phillips v. Girdich, No. 03 Civ. 3317 SCR/LMS, 2009 WL 1868608, at *2 (S.D.N.Y. June 23, 2009) (quoting Martinez v. Senkowski, No. 02–CV–0009, 2008 WL 4501842, at *2 (S.D.N.Y. Sept. 29, 2008)). "When specific objections are made, 'the district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to.' However, when a party makes conclusory or general objections, or simply reiterates his original arguments, the Court reviews the [R&R] only for clear error." Id. (quoting Fed. R. Civ. P. 72(b)(3)) (internal citations omitted).

Here, Webb's objections lack specificity. Although the May 22, 2014 letter purports to "object to the findings and conclusions in the Report and Recommendation" (Dkt. No. 23), it simply reiterates Webb's original arguments in a conclusory fashion, without any further elaboration or discussion of the R&R's findings of fact or conclusions of law.

---

notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.")))

Accordingly, the R&R will be reviewed for clear error.  See Phillips, 2009 WL 1868608, at *2 ("The nature of [petitioner's] purported objections does not warrant de novo review by this Court . . . because all of his objections are repetitive of his original arguments.").

**B.**   **Habeas Review**

When reviewing a petition for habeas relief, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), requires a district court to give deference to state court decisions on the merits.  See Harrington v. Richter, 131 S. Ct. 770, 785 (2011) (noting that "[a] state court must be granted a deference and latitude that are not in operation when the case involves [direct] review [of a criminal conviction]").

Section 2254(d) provides that

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court has emphasized that, "[f]or purposes of § 2254(d)(1), 'an unreasonable application of federal law is different from an incorrect application of federal law.'"  Harrington, 131 S.Ct. at 785 (quoting Williams v. Taylor, 529 U.S. 362, 410 (2000) (emphasis in original)).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  Id. at 786 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 786-87.  This high standard "reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Id. at 786 (quoting Jackson v. Virginia, 443 U.S. 307, 333 n.5 (1979)).

II.   **ANALYSIS**

A.   **Webb's Inability to Testify Before the Grand Jury**

As to Webb's argument that he was deprived of his right to testify before the grand jury, Judge Pitman concluded that Webb failed to state a cognizable claim because – under federal law – Webb had no right to appear before the grand jury.  (R&R (Dkt. No. 22) at 18-19, 28)

Federal courts may "issue a writ of habeas corpus to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" Swarthout v. Cooke, 131 S. Ct. 859, 861 (2011) (quoting 28 U.S.C. § 2254(a)).  The Supreme Court has held that the due process clause "does not require the States to observe the Fifth Amendment's provision for presentment or indictment by a grand jury," and "the Court has never held that federal concepts of a 'grand jury,' binding on the federal courts under the Fifth Amendment, are obligatory for the States." Alexander v. Louisiana, 405 U.S. 625, 633 (1972).  Moreover, "it is well established that defendants have no constitutional right to appear before a grand jury." United States v. Ruiz, 894 F.2d 501, 505 (2d Cir. 1990).  Accordingly, Webb had no right under federal law to testify before the grand jury that indicted him.

As Judge Pitman correctly noted, however, "there is authority for the proposition that a state violates Due Process if it arbitrarily deprives a defendant of a state created right." (R&R (Dkt. No. 22) at 29); see, e.g., Chandler v. Moscicki, 253 F. Supp. 2d 478, 489 (W.D.N.Y. 2003) ("However, where a state creates a right, such as a right to testify before a grand jury, that right cannot be forfeited in an arbitrary or fundamentally unfair manner."); cf. Evitts v. Lucey, 469 U.S. 387, 393 (1985) ("[T]he Constitution does not require States to grant appeals as of right to criminal defendants seeking to review alleged trial court errors.  Nonetheless, if a State has created appellate courts as 'an integral part of the . . . system for finally adjudicating the guilt or innocence of a defendant,' the procedures used in deciding appeals must comport with the demands of the Due Process and Equal Protection Clauses of the Constitution." (quoting Griffin v. Illinois, 351 U.S. 12, 18 (1956))) (internal citations omitted).

This Court need not determine whether Webb was arbitrarily deprived of a state created right, however.  As Judge Pitman correctly found, the jury's finding of guilt beyond a reasonable doubt establishes that any cognizable deprivation of the state-created right to testify before the grand jury was harmless.  See Lopez v. Riley, 865 F.2d 30, 32 (2d Cir. 1989) ("'[T]he petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt.  Measured by the petit jury's verdict, then, any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt.'") (quoting United States v. Mechanik, 475 U.S. 66, 70 (1986))); (see R&R (Dkt. No. 22) at 29) Indeed, a petitioner's claim that he was deprived of his right to due process and equal protection must be dismissed where there is "no reason to believe that [a petitioner]'s appearance and testimony before the grand jury could have resulted in any different action by the grand jury."

Saldana v. State of N.Y., 850 F.2d 117, 119 (2d Cir. 1988).  Webb is "not entitled to [habeas] relief in the federal courts because the . . . failure to allow him to testify before the grand jury could not have made any constitutional difference because he suffered no prejudice."  Id.

This Court also agrees with Judge Pitman's conclusion that – even if Webb's claim were construed as one for ineffective assistance of counsel under the Sixth Amendment – he still would not be entitled to habeas relief.  (R&R (Dkt. No. 22) at 19-21)  Judge Pitman correctly found that courts "'have consistently held that counsel's failure to effectuate a defendant's right to testify before the grand jury does not establish ineffective assistance of counsel.'"  (R&R (Dkt. No. 22) at 20 (quoting Williams v. Ricks, No. 02 Civ. 2131 (RCC) (RLE), 2004 WL 949652, *7 (W.D.N.Y. Mar. 29, 2007) (citing Kohler v. Kelly, 890 F. Supp. 207, 213-14 (W.D.N.Y. 1994), aff'd, 58 F.3d 58 (2d Cir. 1995))))

A claim for ineffective assistance of counsel has two components.  See Strickland v. Washington, 466 U.S. 668, 687 (1984).  "First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Id.  "Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  Id.

Here, even if defense counsel's performance was deficient, Webb has not established prejudice, because he has not "show[n] that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  As discussed above, "any alleged deficiency in the grand jury proceeding . . . was cured by petitioner's conviction by the petit jury," and where a petitioner "cannot establish that any

errors made by his trial counsel with respect to the grand jury proceeding prejudiced him," it "foreclose[es] the possibility of a Sixth Amendment violation." Velez v. People of State of N.Y., 941 F. Supp. 300, 316 (E.D.N.Y. 1996).

Accordingly, the Court adopts the R&R as it relates to Webb's claims regarding the grand jury proceedings; these claims do not provide Webb with a basis for habeas relief. (R&R (Dkt. No. 22) at 21, 29)

**B.     Juror Disqualification**

This Court also finds no clear error in Judge Pitman's determination that Webb did not state a claim for relief regarding the trial court's decision not to disqualify the juror who recognized Gentile.  (R&R at 22 (citing 28 U.S.C § 2254(a)))

To the extent that Webb's claim is premised on a violation of New York Criminal Procedure Law ("C.P.L.") § 270.35 – which provides for the disqualification of jurors who are "grossly unqualified to serve in the case" – Webb does not state a cognizable habeas claim, because his claim rests on state procedural law.  See Faria v. Perez, No. 04-CV-2411 (RRM), 2012 WL 3800826 at *12 (E.D.N.Y. Sept. 2, 2012) ("[T]o the extent that Petitioner relies on N.Y. Crim. Pro. Law § 270.35 for the proposition that the trial court . . . was . . . required to remove the alleged sleeping juror despite her expressly stated desire to have that juror remain empanelled on the jury, Respondents correctly note that Petitioner raises an issue purely of state law."); Linnen v. Poole, 766 F. Supp. 2d 427, 469 (W.D.N.Y. 2011) ("Habeas courts in this Circuit have routinely rejected claims that a trial court improperly delegated its duties under C.P.L. § 270.35 on the basis that such claims involve only a matter of state procedural law and do not present a federal constitutional question." (citing Khan v. Fischer, 583 F. Supp. 2d 390, 390 (E.D.N.Y. 2008); Hughes v. Phillips, 457 F. Supp. 2d 343, 368 (S.D.N.Y. 2006))); Williams

v. LaClair, No. 08 Civ. 11354 (SAS) (JCF), 2010 WL 129810, at *4 (S.D.N.Y. Jan. 13, 2010)

("The allegation of improper discharge of a juror is generally an issue of state law not cognizable

on habeas review. . . . [Petitioner's] allegation that the trial court applied the incorrect standard in

dismissing the juror is entirely a matter of state law and thus is not cognizable on federal habeas

review.").

        Moreover, even if Webb's claim is read as asserting a violation of his Sixth

Amendment right to an impartial jury, he is still not entitled to relief.  During jury

selection, "'[t]he trial court has a serious duty to determine the question of actual bias'" but also

has "'a broad discretion in its rulings on challenges [to specific jurors].'"  Wainwright v. Witt,

469 U.S. 412, 429 (1985) (quoting Dennis v. United States, 339 U.S. 162, 168 (1950)).

Accordingly, "[o]n § 2254 review, the state trial court is entitled to a presumption of correctness

with respect to its conclusion that the jury was impartial."  Fama v. Comm'r of Corr. Servs., 235

F.3d 804, 813 (2d Cir. 2000); see Linnen, 766 F. Supp. 2d at 469 ("In [a] federal habeas action,

findings of [a] state court justice, including [a] finding that [a] juror's conduct did not impair his

ability to render [an] impartial verdict made pursuant to [C.P.L.] § 270.35[,] [are] presumptively

correct." (citing Smith v. Phillips, 455 U.S. 209, 218 (1982))).  "'[T]he Supreme Court has made

it clear that "the trial court's findings of impartiality [may] be overturned only for manifest

error."'"  Id. (quoting Knapp v. Leonardo, 46 F.3d 170, 176 (2d Cir.1995) (quoting Patton v.

Yount, 467 U.S. 1025, 1031 (1984)))

        Here, Webb has not offered any evidence that the trial court abused its discretion

in retaining the juror.  The judge carefully questioned the juror and her answers made clear that

she would not be influenced or biased by the prior interaction with the witness.  A brief and not

memorable meeting between a juror and a witness eight years earlier does not require the juror's

disqualification.  Indeed, the Second Circuit has found no error in cases where a juror had much more significant contact with a witness.  See, e.g., United States v. Garcia, 936 F.2d 648, 653 (2d Cir. 1991) (holding that the district court did not abuse its discretion by refusing to excuse challenged jurors for cause when they admitted "to having formed a favorable opinion" of a government witness's credibility in a prior trial); United States v. Shakur, 723 F. Supp. 925, 938-39 (S.D.N.Y. 1988), aff'd, 888 F.2d 234 (2d Cir. 1989) (holding that a "conclusion of prejudice" drawn from a jury foreperson's childhood acquaintance with a defense witness she recalled as a "mischievous type of kid," who "used to get in trouble," would be "tenuous at best").

Accordingly, this Court adopts Judge Pitman's R&R as it relates to Webb's claim concerning the trial court's refusal to excuse a juror.  (R&R (Dkt. No. 22) at 24)

C.   **Excessive Sentence**

Judge Pitman further concluded that Webb's eleven-year sentence did not constitute excessive punishment under the Eighth Amendment.  (R&R (Dkt. No. 22) at 24-27)

A sentence only violates the Eighth Amendment if it is so "grossly disproportionate" to the crime committed that it "shocks the collective conscience of society." United States v. Gonzalez, 922 F.2d 1044, 1053 (2d Cir. 1991).  In light of this high standard, on habeas review "successful challenges to the proportionality of particular sentences have been exceedingly rare."  Rummel v. Estelle, 445 U.S. 263, 272 (1980).

Here, "to the extent Petitioner argues that his sentence was excessive and therefore cruel and unusual punishment under the Eighth Amendment, Petitioner's claim is not reviewable by this Court since, 'when a sentence is within [the range of years prescribed by law], a claim of excessive punishment does not present a constitutional question necessary for habeas corpus reversal.'"  Izaguirre v. Lee, 856 F. Supp. 2d 551, 571 (E.D.N.Y. 2012) (quoting

Underwood v. Kelly, 692 F. Supp. 146, 152 (E.D.N.Y. 1988), aff'd, 875 F.2d 857 (2d Cir. 1989)).  Webb was convicted of robbery in the second degree – a class C violent felony – and sentenced as a second felony offender.  See N.Y. Penal Law § 160.10; (Sentencing Tr. 8, 10) Under New York Penal Law §§ 70.06(6)(b) and 70.45, the trial court was required to sentence Webb to a term of imprisonment between five and fifteen years, followed by a mandatory five years of post-release supervision.  Webb's sentence of eleven years' imprisonment and five years' post-release supervision was therefore within the statutory bounds.  "No federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law."  White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992).

Webb argues, however, that his "sentence of 11 years is unduly harsh because it significantly exceeds . . . the sentence of 7 years that the Court promised Petitioner before trial." (Petition (Dkt. No. 1) at 5)  This claim may be read as asserting that the sentence imposed was unconstitutionally vindictive, in violation of the Due Process Clause of the Fourteenth Amendment.  "A sentence is unconstitutionally vindictive if it imposes greater punishment because the defendant exercised a constitutional right, such as the right to jury trial."  Izaguirre, 856 F. Supp. 2d at 572.  "To show vindictiveness, a petitioner must offer additional evidence beyond merely a disparity between a pre-trial sentence offer and the length of the sentenced actually imposed after trial."  Washington v. Berbary, No. 09-CV-0805 MAT, 2011 WL 4807917, at *15 (W.D.N.Y. Oct. 11, 2011).  "Where there is no . . . reasonable likelihood [that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority], the burden [is] upon the defendant to prove actual vindictiveness."  Alabama v. Smith, 490 U.S. 794, 799 (1989).

1 of 19

Here, Justice Yates explained why he was sentencing Webb to eleven years' imprisonment, and how the proof at trial had influenced that decision:

> I don't punish people for going to trial.  I never do.  There are times after trial when I give them what was offered before trial.
>
> Let me say, in the interest of full disclosure, the pictures [at trial] showed a – showed a lot of injuries that I don't think I was aware of during the brief plea discussions we had.
>
> . . .
>
> I don't punish people for going to trial.  But I was dismayed to see the extent of the injuries here and to hear about how intoxicated the complainant was[,] so that he was[ ] so completely taken advantage of.
>
> Against all of those factors, I think eleven years is an appropriate sentence.

(Sentencing Tr. 16, 24)  In light of Justice Yates's explanation and the circumstances of Webb's crime, this Court finds no reasonable likelihood that the increase in Webb's sentence was the product of actual vindictiveness.  Rather, as Webb's counsel acknowledged at sentencing, "at trial, details come out that can affect[ ] [–] in the event of a conviction [–] a sentence." (Sentencing Tr. 17)  Because Webb has produced no evidence of actual vindictiveness here, he is not entitled to habeas relief on this ground.

Accordingly, the Court finds that Webb's claims premised on his sentence do not provide a basis for habeas relief.

## CONCLUSION

For the reasons stated above, this Court adopts the findings and conclusions set forth in Judge Pitman's R&R in their entirety.  Webb's petition for a writ of habeas corpus is denied.  The Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(1)(A), because Webb has not "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  The Clerk of the Court is directed to mail a copy

of this Order to Petitioner Sean Webb, No. 06-A-4698, Elmira Correctional Facility, P.O. Box

500, Elmira, New York 14902 and to close this case.

Dated:   New York, New York
        September 30, 2014

                         SO ORDERED.

                         Paul G. Gardephe
                         United States District Judge